# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Melanie McDermott, individually and on behalf of all others similarly situated, | 1:22-cv-01555 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| General Mills Sales, Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      General Mills Sales, Inc. ("Defendant") manufactures, labels, markets, and sells fruit snacks filled with thick, fruit flavored liquids under the Gushers brand ("Product").



2.      The relevant representations include "Fruit Gushers," "Fruit Flavored Snacks," "Strawberry Splash – Flavored With Other Natural Flavors," "Tropical Flavors – Flavored With Other Natural Flavors," "No Artificial Flavors," "Gelatin Free," and various fruit-colored liquids and images of the individual pieces.

3.      The representations about the Product's fruit flavors cause consumers to expect only natural fruit flavors.

4.      However, the representations are false, deceptive, and misleading, because the Product contains artificial flavoring ingredients.

## I.      CONSUMER DEMAND FOR NATURAL FLAVORS

5.      Consumers have been increasingly concerned about the ingredients added to what they eat and drink.

6.      This is especially so when it comes to parents with young children.

7.      Surveys have shown that such parents are less likely to buy snacks for their kids which have artificial ingredients, even where the food or beverage is considered an indulgence or treat.

8.      According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

9.      According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

10.      According to Consumers Union, over 80% of consumers expect that the word

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

"natural," in almost any context, on a food label means that a food does not contain any artificial ingredients.

11.     Explanations for why consumers prefer foods containing natural, instead of artificial ingredients, are varied.

12.     Many Americans believe products are healthier when artificial ingredients are removed, even in "unhealthy" categories such as snacks, cake mix, and frozen pizza.

13.     A recent survey reported that over 82% of US respondents believe that foods with artificial flavors are less healthy than those promoted as containing natural flavors and/or not containing artificial flavors.

14.     Consumers seek to avoid artificial flavors because they are weary of ingredients which are highly processed with chemical additives and synthetic solvents in laboratories.

15.     According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

16.     One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[3]

17.     The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[4]

18.     Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[3] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147–154. doi:10.1016/j.appet.2004.03.005.
[4] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[5]

19.  About half of Americans say they seek out natural flavors at least some of the time.

20.  In contrast, artificial flavors were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time.

21.  Nielsen reported that 62% of consumers try to avoid artificial flavors.

22.  New Hope Network concluded that 71% of consumers avoid artificial flavors.

23.  Label Insight determined that 76% of consumers avoid artificial flavors.

24.  A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[6]

25.  According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors, and would pay more for such foods.

## II.  CONSUMERS VALUE FRUITS

26.  Consumers increasingly value fruit and natural fruit flavors.

27.  Even where a product is a snack food, the addition of natural fruit flavors and absence of artificial flavors causes consumers to feel better about consuming it, without the typical guilt from eating a snack.

28.  The last two decades have seen significant increases in consumer demand for strawberries and tropical fruits.

29.  Among tropical fruits, the most consumed include pineapples, guavas, mangos, and

---

[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[6] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

bananas.

30.     Other tropical fruits which are popular include papayas, oranges, passionfruit, limes, lemons and kiwis.

## III.   PRODUCT REPRESENTED AS ONLY CONTAINING NATURAL FLAVORS

31.     Defendant markets the Product with the prominent statement, "No Artificial Flavors."



32.     The representation that the Product has "No Artificial Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors.

33.     This conveys to consumers that the Product will get its strawberry and tropical taste from only natural flavoring ingredients.

34.     Though the ingredients listed for the strawberry and tropical varieties include "Natural Flavor," they also include "Malic Acid."

**Strawberry Ingredients: Sugar, Corn Syrup, Dried Corn Syrup, Modified Corn Starch, Pear Puree Concentrate, Fructose, Maltodextrin, Palm Oil, Glycerin. Contains 2% or less of:** Cottonseed Oil, Glycerin, Grape Juice Concentrate, Carrageenan, Citric Acid, Monoglycerides, Sodium Citrate, Malic Acid, Vitamin C (ascorbic acid), Natural Flavor, Potassium Citrate, Agar-Agar, Red 40, Xanthan Gum.

**Tropical Ingredients: Sugar, Corn Syrup, Dried Corn Syrup, Modified Corn Starch, Pear Puree Concentrate, Fructose, Maltodextrin, Palm Oil. Contains 2% or less of:** Cottonseed Oil, Glycerin, Grape Juice Concentrate, Carrageenan, Citric Acid, Monoglycerides, Sodium Citrate, Malic Acid, Vitamin C (ascorbic acid), Natural Flavor, Potassium Citrate, Agar-Agar, Xanthan Gum, Color (red 40, blue 1, yellow 5 & 6).

35. Each variety contains more malic acid than natural flavor.

36. Unbeknownst to consumers, the ingredient list does not inform consumers that this malic acid is an artificial flavoring ingredient which provides flavoring to the Product.

37. Instead of listing DL-Malic Acid, the ingredient is identified only as "Malic Acid," in violation of regulations that ingredients must be listed by their specific, and not general name.

## IV.  MALIC ACID

38.    A flavor is a substance the function of which is to impart taste. See 21 C.F.R. § 101.22(a)(1) and (3).

39.    Taste is the combination of sensations arising from specialized receptor cells located in the mouth.[7]

40.    Taste can be defined as sensations of sweet, sour, salty, bitter, and umami.

41.    However, limiting taste to five categories suggests that taste is simple, which is not true.

42.    For example, the taste of sour includes the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

43.    Each of those acids is responsible for unique sensory characteristics of sourness.

## V.  FLAVOR PROPERTIES OF STRAWBERRY AND TROPICAL FRUITS

44.    Fruit flavors are the sum of the interaction between sugars, acids, and volatile compounds.[8]

45.    Consumer acceptability of the flavor of strawberries and tropical fruits are based on their perceived sweetness and tartness, determined by their sugar to acid ratio.

46.    Sugars, mainly glucose and fructose, and their ratio to acids, such as citric and malic acid, determine the sweetness of fruits.

47.    The table below shows the acid composition of numerous fruits.

---

[7] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[8] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

Table I. Acids Naturally Present in Fruits

| Fruit | Predominant Acid | Secondary Acids |
|---|---|---|
| Apple | Malic Acid (95%*) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%*) | Citric Acid, Tartaric Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%*) | Citric Acid |
| Pear | Malic Acid (77%*) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%*) | Fumaric Acid |

*% of the total acid in the fruit

48.     In strawberries, pineapples, mangos, and guavas, citric acid and malic acid are the most important organic acids.

49.     In bananas, papaya, and watermelon, the predominant fruit acid is malic acid.

50.     Malic acid contributes to the fruity, sweet and sour taste not just of these tropical fruits but of almost every other tropical fruit.

A.   Chemical Structure of Malic Acid

51.     Malic acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

52.     Malic acid has two isomers, or different arrangements of atoms in the molecule, L-malic acid, and D-malic acid. 21 C.F.R. § 184.1069.

53.     An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[9]

_____

[9] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

8

54.     Stereoisomers contain different types of isomers, each with distinct characteristics that separate each other as different chemical entities with different chemical properties.

55.     Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree.

56.     An enantiomers is a type of stereoisomer that is a mirror-image and cannot be superimposed.

57.     Enantiomers are like right and left-hand versions of the same molecular formula.

58.     D-Malic Acid and L-Malic Acid are enantiomers.

59.     Below are skeletal formulas of the enantiomers D-Malic Acid and L-Malic Acid:



60.     L-malic acid occurs naturally in various fruits and is known for providing sweetness and tartness, among other flavors.

61.     D-Malic Acid does not occur naturally.

62.     D-Malic Acid is most commonly found as a racemic mixture of the D isomer and L isomer, DL-Malic Acid, which is commercially made from petroleum products.

## VI.   ADDITION OF DL-MALIC ACID

63.    When chemical components of a solution are added to a solution, the previous combination of chemicals changes.

64.    Adding DL-Malic Acid to a solution of natural flavorings containing L-Malic Acid changes the concentration of malic acid in the solution and the ratio of total malic acid to sugars in that solution.

65.    Natural sugars – like glucose, fructose, and sucrose – combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L-Malic Acid found in the characterizing strawberry and tropical flavors of the Product is not equivalent to the natural flavor of those characterizing fruits and flavors.

66.    A natural chemical combination of sugar and L-Malic Acid, altered by adding artificial DL-Malic Acid, is no longer equivalent to the original chemical combination of sugar and L-Malic Acid, and therefore no longer the natural flavor.

67.    Defendant includes DL-Malic Acid to help make the Product taste tart and fruity, like strawberries and tropical fruits taste naturally.

68.    Defendant adds artificial DL-malic acid to the Product to create, enhance, simulate, and/or reinforce the sweet and tart taste that consumers associate with strawberries and tropical fruits.

69.    Defendant had the option to add naturally extracted L-Malic Acid, naturally manufactured acid such as citric acid, natural strawberry or tropical fruit flavors to the Product, but used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled the natural strawberry and tropical fruit flavors than citric acid or other acids.

70.    DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

71.     Since there are natural and artificial types of malic acid, laboratory analysis is required to identify which type was used in the Product.

72.     Laboratory analysis concluded the strawberry and tropical varieties of the Product contain artificial, DL-malic acid, instead of natural, L-malic acid.

73.     The Product's front label is misleading because it states, "No Artificial Flavors," "Fruit Flavored Snacks," and "Flavored With Other Natural Flavors," when these statements are false and misleading.

74.     The ingredients are declared in a way that is misleading and contrary to law, because Defendant lists "Malic Acid," the ingredient's generic name, instead of its specific name, "DL-Malic Acid."

## VII.  REQUIREMENTS FOR LABELING

75.     Federal and identical state regulations prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors.

76.     Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

77.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

78.     DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source.

79. A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a fruit or vegetable.

80. A combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing natural flavors of the Product cannot be derived from a fruit or vegetable.

81. A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruits of the Product is not a natural flavor.

82. The natural flavor of strawberries and tropical fruits is heavily dependent on specific ratios of sugar and L-Malic Acid, while the Product's flavors depend upon a ratio of sugar and DL-Malic Acid.

83. DL-Malic Acid could function as a flavor enhancer or PH balancer.

84. A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

85. For example, malic acid added to vinegar (ascetic acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

86. However, because the flavor imparted by malic acid is a core component of strawberries and tropical fruits, DL-Malic Acid does not function as a flavor enhancer.

87. Under these circumstances, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to strawberry and tropical fruits, so that the flavors of the Product are no longer a natural ratio of sugar and L-Malic Acid but instead an artificial ratio of sugar and DL-Malic Acid.

88. PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

89. The malic acid used is not a PH balancer because it is not necessary to change or maintain active acidity or basicity in the Product.

90. Irrespective of the purpose Defendant may claim DL-Malic Acid was added to the Product, it has the same effect on its characterizing flavors.

91. Defendant does not have the ability to command DL-Malic Acid to only perform certain functions and is not allowed to decide which malic acid constitutes flavor and which malic acid constitutes only a flavor enhancer or PH balancer.

92. The Product's primary or "characterizing" flavors are strawberries and tropical fruit. 21 C.F.R. § 101.22.

93. The Product's label makes "direct or indirect representations" about its characterizing flavors, through words, "Strawberry [Splash]" and "Tropical [Flavors]," and the multicolored labeling purporting to be juices from various fruits. 21 C.F.R. § 101.22(i).

94. Federal and state regulations require the Product to disclose whether its characterizing strawberry and tropical fruit flavor is from strawberries and tropical fruit, natural sources other than strawberries and tropical fruit, and/or from artificial, chemical sources, such as DL-Malic Acid, from petroleum. 21 C.F.R. § 101.22(i).

95. Since the Product contains artificial flavor, DL-Malic Acid, that simulates, resembles and reinforces the characterizing strawberry and tropical fruit flavor, the name of the characterizing flavors "shall be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Strawberry and Tropical Flavored." 21 C.F.R. § 101.22(i)(2).

96. The statements, "Flavored With Other Natural Flavors," "Fruit Flavored Snacks,"

"No Artificial Flavors," and the multicolored label and packaging caused consumers like Plaintiff to expect only natural flavors.

97.    Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

98.    Consumers are unable to learn the malic acid is used to provide flavoring without a detailed knowledge of chemistry and relevant regulations.

99.    Defendant is required to tell consumers if it used the artificial version of malic acid, instead of only using the generic name.

100.   The Product's strawberry and tropical flavors containing DL-Malic Acid resembles the natural characterizing flavors represented to be used.

101.   Plaintiff purchased the Product because the packaging claimed it contained "No Artificial Flavors" and that only natural flavors were responsible for the strawberry and tropical fruit taste.

102.   Plaintiff was unaware that the Product contained artificial DL-Malic Acid at the time of purchase, and that this ingredient affected its characterizing flavors.

103.   Defendant, and not Plaintiff, knew or should have known that the statement, "No Artificial Flavors," was false, deceptive, and misleading, and that Plaintiff would not be able to tell the Product contained artificial DL- Malic Acid unless Defendant disclosed this, as required by law.

104.   Defendant employs professional chemists to create the chemical flavor formula of the Product.

105. Defendant knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to the Product, the natural flavorings would be

14

fundamentally changed.

106. Defendant knew that DL-Malic Acid would contribute to the tart and fruity strawberry and tropical fruit taste, and that it was used to enhance the taste of strawberries and tropical fruits.

107. On information and belief, Defendant through their employees did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in the Product but chose to include DL-Malic Acid because it was cheaper for Defendant than using natural L-Malic Acid and because it did not believe its customers were educated enough to know the difference.

## VIII. CONCLUSION

108. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

109. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

110. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

111. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

112. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

113. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.49 per 4.8 OZ, excluding tax and sales,

higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

114. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

115. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

116. Plaintiff Melanie McDermott is a citizen of Illinois.

117. Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Hennepin County, Minnesota.

118. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

119. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

120. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

121. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

122.  Plaintiff Melanie McDermott is a citizen of Chicago, Cook, Illinois.

123.  Defendant General Mills Sales, Inc. is a Delaware corporation with a principal place of business in Minneapolis, Minnesota, Hennepin County.

124.  Defendant is one of the largest food companies in the world.

125.  In its early years, the company's focus was on milling flour, and it was led by a military general, thus the name of "General Mills" seemed to stick.

126.  During the Second World War, General Mills switched from producing foods to armaments for the military.

127.  Following the war, General Mills developed numerous culinary innovations to improve the lives of Americans.

128.  The Gushers brand is sold under the Betty Crocker line of products.

129.  Betty Crocker is considered the mother of the American kitchen, because of her profound influence on the culinary practices in this country.

130.  Betty Crocker was known for eschewing artificial and synthetic ingredients, in favor of authentic ingredients, with as few chemically processed ingredients as possible.

131.  The Betty Crocker brand tells consumers a product will meet the high standards Ms. Crocker espoused.

132.  The Gushers brand is one of the top selling fruit snacks in America.

133.  A lunchbox mainstay, children and adults enjoy Gushers because they have a chewy and fruity taste.

134.  That the Product purports to get its taste from natural fruit flavors causes many parents to buy them for their children, because they seek to avoid foods containing artificial

flavors.

135.   Even though Gushers is a snack food, consumers increasingly turn to snacks that are indulgences, provided they contain ingredients which they value or, in this instance, represent that they do not contain ingredients which they try to avoid, such as artificial flavors.

136.   Consumers trust General Mills and the Gushers brand to be honest with them, because they have built up a reservoir of good will when it comes to foods, especially snacks.

137.   The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

138.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Meijer, 14169 S Bell Rd Homer Glen IL 60491-8464 between February 8, 2022, and March 8, 2022, and/or among other times.

139.   Plaintiff believed and expected the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients because that is what the representations and omissions said and implied.

140.   Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

141.   Plaintiff bought the Product at or exceeding the above-referenced price.

142.   Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

143.   Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, requirements, instructions, features, and/or components.

144.   The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

145.   Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

146.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar fruit snacks, because she is unsure whether those representations are truthful.

<u>Class Allegations</u>

147.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

148.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

149.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

150.   Plaintiff is an adequate representative because her interests do not conflict with other members.

151.   No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

152.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

153.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

154.  Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

155.  Plaintiff incorporates by reference all preceding paragraphs.

156.  Plaintiff believed the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

157.  Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

158.  Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

159.  Plaintiff relied on the representations and omissions to believe the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

160.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

161.  The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

162.   The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

163.   Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

164.   As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

165.   Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

166.   The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

167.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

168.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

169.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

21

170. Defendant's representations affirmed and promised that the Product contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

171. Defendant described the Product so Plaintiff and consumers believed it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

172. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

173. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

174. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

175. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

176. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

177. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

178. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

179. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed

22

as if it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

180. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

181. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

182. Defendant had a duty to truthfully represent the Product, which it breached.

183. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

184. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

185. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

186. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

187. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

188.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

189.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained only natural flavoring ingredients and did not contain artificial flavoring ingredients.

190.   Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

191.   Defendant knew of the issues described here yet did not address them.

192.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

193.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and

representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 24, 2022

Respectfully submitted,

/s/Spencer Sheehan

Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com